Mr. Andre K. Valley, City Attorney City of Helena-West Helena c/o Wilson Valley, P.A. 423 Rightor Street Helena-West Helena, Arkansas 72342
Dear Mr. Valley:
I am writing in response to your request, made pursuant to A.C.A. §25-19-105(c)(3)(B) (Supp. 2007), for my opinion on whether the Helena-West Helena Fire Chief's decision to deny access to "scores and exams given to potential Fire Fighters on February 11, 2008" in response to a reporter's request under the Arkansas Freedom of Information Act ("FOIA"), is consistent with that law. Specifically, you have attached an FOIA request from the reporter, seeking the "scores and exams." You explain the surrounding facts as follows:
 . . . the City of Helena-West Helena Fire Department engaged in pre-employment testing for a pool of potential employees who had applied for the Helena-West Helena Fire Department. The Helena-West Helena Fire Department consists of three separate exams. The first exam is a written exam, and all successful candidates who pass the written exam are afforded the opportunity to take the physical agility exam. After candidates successfully complete both the written exam and the physical agility exam they are given an oral examination by a panel of Helena-West Helena Firefighters. Immediate [sic] after the completion of the written exam, the [reporter] issued the attached freedom of information act request relating to Firefighter exams.
Although you do not expressly state as such, it is my understanding that the City of Helena-West Helena no longer has a civil service commission. *Page 2 
You state that the City's concerns are three-fold: 1) "whether the City can release the personal information of this sort for individuals who are not city employees yet have participated [sic] formal process"; 2) "which portions of the application[1] and test scores are subject to release under the freedom of information act request"; and 3) whether "the release of its testing data will give potential applicants an unfair advantage in the employment process as some potential employees would have access to examinations prior to the city administering the exam." You have also attached a February 19, 2008 letter you wrote to the reporter, embodying the custodian's determination in this regard, stating that, after conferring with officials at the Arkansas Municipal League, "it is our joint opinion that the law is unclear regarding this issue" and that "As such, it is my opinion that the City cannot at this time release the information. . . ."
RESPONSE
My statutory charge under A.C.A. § 25-19-105(c)(3)(B) is to state whether the decision of the custodian in consistent with the FOIA. In my opinion, although the law is not entirely settled on the points raised by your request, the custodian's decision is inconsistent with the FOIA. With regard to the requested "exams," I am somewhat uncertain as an initial matter whether the requester seeks only a blank copy of the written examination, or the completed exams filled out by applicants. In the former event, assuming there is no civil service system in the City, in my opinion no applicable exemption shields the blank testing form. In the latter event, an issue arises as to whether the completed exams should be withheld under the A.C.A. § 25-19-105(b)(12) exemption for "personnel records to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy." I and my predecessors have consistently concluded, however, although there may be room for disagreement, that the A.C.A. § 25-19-105(b)(12) "personnel records" exemption does not shield records pertaining to job applicants, if they are not already employed by the City. With regard to scores, this office has consistently held that names of city employees (personnel of the city), should be redacted in conjunction with the release of any test scores of such employees in light of the A.C.A. § 25-19-105(b)(12) exemption for "personnel records." Additionally, this office has concluded that if release of the scores with the names redacted would *Page 3 
nonetheless betray the employee's identity, the scores themselves must also be withheld. Again, however, I and my predecessors have concluded that that "personnel records" exemption is not applicable to the scores of applicants (non-"personnel"). There is no controlling precedent on this point, however, and there is at least some scholarly disagreement concerning the proper conclusion. As this office has noted more than once, legislative clarification is indicated.
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2005). Given that the documents in question are kept in the course of city business, I believe documents containing the requested information clearly qualify as "public records" under this definition.
As I recently stated in Op. Att'y Gen. 2007-206:
 If records fit within the definition of "public records" . . ., they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific exemption in that Act or some other pertinent law.
Id. at 4-5, quoting Op. Att'y Gen. No. 1999-305.
An analysis of whether the requested "scores and exams" are open to public inspection and copying must therefore focus on whether there are any statutory exemptions in the FOIA or elsewhere, that would shield the documents in question. Otherwise, they are available for inspection and copying under the FOIA. *Page 4 
With regard to the requested "exams," as noted above, I am somewhat uncertain whether the reporter seeks only a blank copy of the exam, or copies of the completed examinations filled out by applicants. In either event, two potentially applicable exemptions should initially be discussed in this regard. In my opinion, however, neither is applicable to shield copies of firefighter examinations given in a city that does not have a civil service commission.
First, A.C.A. § 14-51-301(b)(2) (Supp. 2007) of the Arkansas Code requires that the rules prescribed by a board of civil service commissioners shall include the following:
 (A) Open competitive examinations to test the relative fitness of applicants for the positions.
 (B)(i) The examinations are to be protected from disclosure and copying, except that the civil service commission shall designate a period of time following the conclusion of testing in which an employee taking an examination shall be entitled to review his or her own test results.
 (ii) During the employee review process, the employee may not copy test questions in any form whatsoever[.]
A.C.A. § 14-51-301(b)(2) (Supp. 2007) (emphasis added).
Thus, as I concluded in Op. Att'y Gen. 2007-242, "Subsection14-51-301(b)(2)(B)(i) clearly exempts civil service "examinations from inspection and copying under the FOIA" and ". . . this means that the testing materials are not subject to disclosure." The statute set out above, however, is inapplicable, in my opinion, to cities without civil service commissions. It is my understanding that the City of Helena-West Helena, although it evidently gives examinations to fire department applicants, no longer has a civil service commission. If so, the statute above cannot operate to shield the exams in question. The employment tests given by a city without a civil service system, although they fall within the definition of "public records" for purposes of A.C.A. §25-19-103(5)(A), are afforded no statutory exemption. An argument might be made that the rationale of the civil service statute above should apply even to cities without civil service commissions. The FOIA, however, exempts only information ". . . specifically exempted by [A.C.A. § *Page 5 25-19-105] or by laws specifically enacted to provide otherwise." Any exemption from the FOIA's disclosure requirements must thus be "specifically enacted to provide otherwise." Section 14-51-301(b)(2) was adopted in connection with civil service commission examinations and I cannot conclude that A.C.A. § 14-51-301(b)(2) provides a specific exemption in this regard for examinations given in cities that do not have civil service commissions.
Second, A.C.A. § 25-19-105(b)(14) exempts:
 Materials, information, examinations, and answers to examinations utilized by boards and commissions for purposes of testing applicants for licensure by state boards or commissions. . . .
This exemption was added to the FOIA after the Attorney General opined that no general exemption shielded copies of the state exams in question. See Op. Att'y Gen. 95-023. This exemption applies on its face, however, only to "applicants for licensure by state boards orcommissions." (Emphasis added). It therefore does not cover examinations given by cities to potential employees, and cannot operate to shield the documents at issue in your request.
The two exemptions discussed above therefore do not operate to shield either blank or completed examinations of the firefighter applicants in question.
With regard to releasing the "scores"[2] of individual firefighter applicants on the written exam, and to the extent the reporter seeks copies of completed, rather than blank examinations, one other potentially applicable exemption should be discussed. Section25-19-105(b)(12) of the Arkansas Code exempts "personnel records to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy."
When this exemption is implicated, the Arkansas Supreme Court applies a balancing test to determine whether records are properly withheld pursuant thereto. For example, in Young v. Rice, 308 Ark. 593 (1992), the Arkansas Supreme Court addressed records produced in connection with one phase of a lieutenant promotional examination for existing police officers — an "assessment *Page 6 
center evaluation" that occurred after the written examination. The relevant records included tape-recordings of part of the proceedings and an "assessors' report form," which recorded the assessors' observations and scored the applicants on a one to five point scale in a number of categories. The court applied the relevant "clearly unwarranted invasion" balancing test, weighing the public's interest in accessing the records against any privacy interest of the city employees. The court concluded that the "public's interest, the right to know that its safety is protected by competent and the best-qualified police lieutenants, [was] substantial." Id. at 598. The court also concluded that "a substantial personal privacy interest" was at stake, because the "assessment center evaluation" included certain role-playing and "group discussion" aspects, the records of which sometimes involved certain embarrassing actions displayed by the candidates for promotion. The court held that the public's interest was satisfied, however, by release of the "assessor's report form" with the names of individual candidates redacted. The court thus upheld the trial court's order requiring release of the police officer's scores with the names of the individual candidates redacted.
Although the Young decision turned upon its own particular facts, after that decision, I and my predecessors have acknowledged, under certain factual circumstances, the necessity of redacting the names of public employees in conjunction with the release of certain types of employment scores. See Ops. Att'y Gen. Nos. 2006-044; 2002-160; 2001-172. Additionally, where the facts warrant (where the scores alone would betray the identity of the employees), the withholding of the namesand scores of public employees has been sanctioned. See Ops. Att'y Gen. Nos. 2003-381; 2000-226; 2000-159; 2000-122; 2000-119; 99-016; 99-002; 97-177; 97-034; 97-033 and 93-079. As stated in Op. Att'y Gen. 2003-015: "The reasoning that underlies this position is that although the public has a valid interest in knowing that public employees possess a level of skill sufficient to perform their duties, information indicating specific scores is not necessary to satisfy this interest." My predecessor later acknowledged a separate public interest at play in some instances, however — the interest in knowing that "the most qualified applicant was actually hired." Op. Att'y Gen. 2005-086.See also Op. Att'y Gen. 2006-044.[3] *Page 7 
The conclusions above, however, which require redacting or withholding score information from "personnel records" if its release would constitute a "clearly unwarranted invasion of personal privacy," have been applied only to existing employees, or persons who have become "personnel" of the city. Although acknowledging that there is room for disagreement, my predecessors and I have steadfastly concluded that the A.C.A. § 25-19-105(b)(12) exemption for "personnel records" does not apply to job applicants, who are not "personnel" of the city.See, e.g., Ark. Ops. Att'y Gen. Nos. 2007-242; 2005-086; 2003-015; 2002-068; 93-421; 93-403 and 93-114.
I recently addressed a similar question in Op. Att'y Gen. 2007-242, and concluded that the "personnel records" exemption did not protect the names, scores and rankings of entry level, non-employee fire or police applicants.[4] I stated: "Regarding possible exemptions under the FOIA, this office has consistently taken the position that records of this nature pertaining to non-employees should not be classified as `personnel records,' which are protected from release to the extent their disclosure would constitute a `clearly unwarranted invasion of personal privacy,' id. at-105(b)(12)." (Emphasis added). I relied upon Ops. Att'y Gen. 2003-015 and 2005-086 for this proposition.
The primary opinion upon which I relied, Opinion 2003-015, differentiates between employees, or applicants who where hired, on the one hand, and applicants who were not hired, on the other. First, with regard to revealing the scores of employees, or applicants who were hired, my predecessor stated that:
 This office has previously opined that the release of records reflecting employees' names and scores would constitute a clearly unwarranted invasion of personal privacy, and although in some instances it may be sufficient to redact the employees' names while disclosing a list of the scores, it is not sufficient to do so if, under the circumstances, the public could ascertain which applicants received particular scores simply from a listing of the scores. See Ops. Att'y Gen. Nos. 2002-161; 2001-172; 2000-226; 2000-119; 99-016; 99-002; 97-177; 97-034; 97-033; 93-079; 89-054. The reasoning that underlies this position is that although *Page 8 
the public has a valid interest in knowing that public employees possess a level of skill sufficient to perform their duties, information indicating specific scores is not necessary to satisfy this interest. Id.; Watkins, The Arkansas Freedom of Information Act (3rd ed. 1998).
Id. at 3.
As also stated in Op. Att'y Gen. 2003-015, however:
 . . . the names and scores of applicants who are not employees should not be redacted. The reason for this differentiation is that the "clearly unwarranted" standard applies only to "personnel records." The Applicant Selection Record is not the "personnel record" of any applicant who is not already an employee or who is not hired as a result of the application process. For those individuals, there is no exemption under the FOIA or any other law that would permit withholding this information from the public. I note that the Arkansas Supreme Court has steadfastly interpreted the FOIA liberally in favor of openness and has construed exemptions narrowly, so as to serve the FOIA's purpose of assuring that the public is "fully apprised of the conduct of public business." Waterworks v. Kristen Invest. Prop., 72 Ark. App. 37, 32 S.W.3d 60
(2000); Orsini v. State, 340 Ark. 665, 13 S.W.3d 167 (2000). I also note that the FOIA contains no general privacy exemption protecting personal information outside the personnel records context.[5]
Id. at 3-4. See also, Op. Att'y Gen. 2002-068 (concluding that records pertaining to applicants who are neither successful nor unsuccessful at the time the FOIA request is made should be treated as "simple public records"). *Page 9 
My predecessor also noted, however, that ". . . there is no controlling authority on the issue of whether the records of unsuccessful applicants should be classified as `personnel records.' The lower courts are divided on the issue. Compare Little Rock School District v. Little RockNewspapers, Inc., Pulaski County Circuit Court Case No. 87-7638 (1987) and Little Rock Newspapers, Inc. v. Board of Trustees of the Universityof Central Arkansas, Pulaski County Circuit Court Case No. 87-6930 (1987). The Arkansas Supreme Court has not addressed the issue."Id. at n. 2.[6] As also noted in Op. Att'y Gen. 2003-015, however, "Professor John Watkins, a leading commentator on the FOIA, has taken the opposing view, stating: `The better view is that the term `personnel records' includes documents pertaining to job applicants, whether or not they are ultimately hired.'" Id. at n. 2. See most recently, Watkins and Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press 2004, at 177-179 and accompanying footnotes).
Despite the lack of controlling authority on the question, my predecessor concluded that "[t]his office has consistently taken the position set forth above, i.e., that such records should not be classified as `personnel records.' See, e.g., Ark. Ops. Att'y Gen. Nos.95-201, 93-421, 93-403 and 93-114." Id. at n. 2. My predecessor stated that he "recognize[d] that the disparity of this result between employees and non-employees could be perceived as unfair" and that he would "be reviewing [his] position on this interpretation of the FOIA."Id. at n. 2.
Despite this proclamation, my predecessor did not find an occasion to reverse course on this point. On the contrary, in a later opinion, Op. Att'y Gen. 2005-086, my predecessor reached the same conclusion in upholding the release of names, scoring sheets and a final tally sheet prepared by an interview panel which was formed to interview applicants for a position with the City of Little Rock Public Works Department. It was noted in that opinion that "[a]lthough [the] FOIA does not define the term ["personnel"], Random House Webster's UnabridgedDictionary (2d ed. 1999) defines the term "personnel" as "a body of persons employed in an organization or place of work." Id. at n. 2.
My predecessor stated that:
 Although there may be instances in which the application of these principles to the interview scores of employees and non-employees would result in inequities, as it would if a number of *Page 10 
employee applicants were to enjoy protections from disclosure not available to non-employee applicants, the current situation does not appear to lead to any such inequities. As discussed above, everyone's records will be equally subject to disclosure. Rather than elaborately discussing the existing tension in the law regarding whether unsuccessful applicants' records are "personnel records," [footnote omitted] I will defer from speculating in the hope that legislative or judicial clarification might be forthcoming.
Id. at 5. See also Op. 2002-068.
Similarly, I noted in Op. Att'y 2007-242 that:
 This office has also previously acknowledged the possible inequities that can result when applying the FOIA's personnel records exemption in the job application context, specifically in instances where interview scores of both non-employees and current employees are at issue. See Ops. 2005-086 and 2003-015. Your particular question does not call for further review of these issues. You should be aware, however, that there is a need for legislative clarification in this area. See Op. 2005-086.
As in Ops. Att'y 2005-086 and 2007-242, the facts presented to me by your request do not reflect such "inequities" as might require reconsideration of the previous long-held conclusions of this office on this point. In short, if records fit within the definition of "public records" under the FOIA, they are subject to inspection and copying unless an applicable exemption shields them. As stated above, the FOIA is construed liberally in favor of openness and exemptions are construed narrowly. The A.C.A. § 25-19-105(b)(12) exemption for "personnel records" will thus be construed narrowly, and in my opinion likely excludes persons who do not constitute "personnel" of a covered entity as that term is commonly understood. As a consequence, I must conclude that the records you describe of fire department "applicants" are subject to inspection and copying under the FOIA, there being no exemption that shields them. In my opinion, therefore, the custodian's decision is inconsistent with the FOIA. Again, however, legislative or judicial clarification of the issue is warranted. *Page 11 
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:ECW/cyh
[1] Although you state your concern as to which portion of the "application" is subject to release, it does not appear that the reporter has requested any "applications." She mentions only "scores and exams."
[2] You do not indicate what form the responsive records in this regard might take. I am thus uncertain whether there is a separate document listing the scores or ranking of the applicants, or whether the only score is reflected on the examination document itself.
[3] My predecessor thus acknowledged that the public interest may in some cases predominate to require release of the name and score of a successful applicant selected over a number of other applicants.See Ops. Att'y Gen. 2006-044 and 2005-086.
[4] I also concluded, however, that A.C.A. § 14-51-301(b)(2) shielded the actual testing materials where the city had a civil service commission.
[5] My predecessor noted at this juncture that: "Act 608 of 1981 added a clause to the FOIA to provide a general privacy exemption for information "of a personal nature." See Acts 1981, No. 608, § 1. However, that clause was deleted by Act 468 of 1985. See
Acts 1985, No. 468, § 1. In addition, my predecessor concluded that the information at issue therein did not warrant protection afforded by the constitutional right of privacy discussed inMcCambridge v. City of Little Rock, 298 Ark. 219,766 S.W.2d 909 (1989).
[6] For a brief recitation of the facts of the two circuit court decisions, see Op. Att'y Gen. 93-114.